UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-30-19
```

UNITED STATES OF AMERICA,

    -against-

RAZHDEN SHULAYA,

        Defendant.

RAZHDEN SHULAYA,

        Petitioner,

    -against-

UNITED STATES OF AMERICA

        Respondent.

17 CR 350 (LAP)

19 Civ. 661 (LAP)

<u>MEMORANDUM AND ORDER</u>

LORETTA A. PRESKA, Senior United States District Judge:

**I.** **Shulaya's Petition Pursuant to 28 U.S.C. § 2255 is Denied**

Before the Court is the motion to vacate filed by Razhden Shulaya (the "Petitioner" or the "Defendant") pursuant to 28 U.S.C. § 2255 (the "Motion") [dkt. no. 1 in 19-CV-661], and Shulaya's letter filed February 12, 2019, seeking to amend and/or supplement the original motion (the "Amendment" or "Amd.") [dkt. no. 6 in 19-CV-661]. The Motion seeks to vacate Shulaya's sentence on the ground that Shulaya's counsel in his underlying criminal case, Anthony Cecutti, rendered ineffective assistance by failing to provide advice as to whether Shulaya should have accepted a prior plea offer extended by the Government in February 2018.

1

Shulaya claims that, "[h]ad Defendant been informed that he would received [sic] a sentence of 45 years imprisonment if he rejected the plea agreement, or that the evidence against him would likely result in a conviction at trial, and/or that he should accept the Government's plea offer, he would have accepted the plea agreement and entered a plea of guilty according to the terms of the plea agreement." Mot. at 2. The Amendment seeks to add a further claim of ineffectiveness, specifically that Mr. Cecutti "labored under an 'actual conflict of interest'" insofar as Mr. Cecutti "was appointed under the Criminal Justice Act . . . despite the fact that Petitioner was capable and willing to retain his own attorney." Amd. at 2.

The Motion and Amendment follow on a series of frivolous and false claims by Shulaya regarding his case, his innocence, and his relationships with his prior counsel. The Motion is of a piece with those prior submissions: on at least two prior occasions, the Court confirmed that the Government's prior plea offer was transmitted and explained to Shulaya by his counsel and that Shulaya had, following those consultations, rejected that offer in favor of proceeding to trial. The Amendment, moreover, is flatly contradicted by the extensive record in this case, which makes plain that Mr. Cecutti was assigned as CJA counsel, remained assigned as stand-by counsel during the period that Shulaya in

fact retained counsel, continued again as lead counsel after Shulaya essentially fired his retained counsel, and that Shulaya was in fact supportive of Mr. Cecutti's continued representation. At no time was Shulaya forced to accept representation from a Court-appointed attorney.

## A. Background

### 1. Background to the Shulaya Enterprise and the Charges

Razhden Shulaya has held himself out as a "vor v zakone." Vor v zakone is a Russian phrase that translates to "Thief-in-Law" and refers to "a fraternal order of elite criminals that dates back to the time of the czars." Shulaya boasted of his membership during intercepted phone calls, in meetings with confidential sources, in meetings with witnesses called at his trial, and during a series of vicious beatings that Shulaya administered in service of his position over the course of his time in the United States.

A vor v zakone – commonly known as a vor – stands at the highest level of Russian organized criminal groups, akin to a "Godfather" within an Italian organized criminal group. Traditionally, vors demand and receive obshchak, or tribute, from criminals and laypersons within the vor's protection, license criminal activity by others, and resolve disputes

between members of the criminal community. Shulaya, in his
capacity as a vor, led a large-scale racketeering conspiracy
that operated in New York City, Las Vegas, Florida, and
elsewhere. Shulaya oversaw loyal subordinates who participated
in criminal activities with his permission and for his benefit,
who received his protection and extended it to others, and who
enforced his authority through intimidation and violence. Among
other things, the Shulaya Enterprise transported and sold
stolen property, used false identification documents to cash
forged checks and to use counterfeit credit cards, run an
illegal gambling parlor, extorted debtors to its gambling
operations, laundered criminal proceeds, and planned to rig
slot machines to defraud casinos.

On or about June 6, 2017, a grand jury returned an
indictment charging Shulaya and twenty-six members and
associates of the Shulaya Enterprise with racketeering
conspiracy and related crimes. See dkt. no. 1.[1]  In
subsequently unsealed superseding indictments, the grand jury
charged additional persons. See, e.g., ECF. Docs. No. 58
(Khurtsidze), and 189 (Marat-Uulu and Jikia).

---

[1] All references to docket entries refer to the docket in the
criminal case, United States v. Shulaya et al., 17 Cr. 350
(LAP).

## 2. Shulaya's Repeated Changes of Counsel, Abuse of Prior Counsel, and False Claims Regarding Counsel

Prior to sentencing proceedings, Shulaya retained at least three attorneys and also benefited from the work of two court-appointed attorneys who ultimately tried Shulaya's case and prepared an extensive sentencing submission on his behalf. Upon his presentment in this District, Shulaya retained the services of Peter Kapitonov, Esq. See dkt. no. 124. Mr. Kapitonov was the attorney through whom Shulaya offered a perjurious witness at an early bail hearing, as described in the Government's prior submission dated November 6, 2018. See also Tr. of Aug. 10, 2017, Hearing, dkt. no. 268. On August 10, 2017, on the same day as this failed bail hearing, attorney Christopher Shella entered a notice of appearance as Shulaya's additional retained counsel. Dkt. no. 225.

Following Mr. Shella's entry in the case, Shulaya and an associate circumvented the Court's protective orders and made false representations to the Bureau of Prisons and the Court. The various misrepresentations made by or on behalf of Shulaya in connection with Mr. Shella's brief representation are set forth in the Government's November 6, 2018 submission. Judge Forrest convened a conference to discuss those misrepresentations and abuse of her discovery orders. See dkt. no. 360 (Transcript of October 18, 2017 conference ("Oct. 18 Tr.")). At the conclusion

of that conference, the Court relieved Mr. Shella as counsel and ordered that Shulaya receive a court-appointed attorney.[2]

On October 23, 2017, Shulaya's eventual trial counsel, Mr. Cecutti, was appointed under the provisions of the Criminal Justice Act. On January 2, 2018, Shulaya retained his fourth attorney, Elizabeth Macedonio, Esq., who entered her appearance on that day. Dkt. no. 482. Mr. Cecutti was not relieved at that time, however, and continued to represent Shulaya. See Amd. at 2.

Shulaya continued to claim difficulties with his counsel even after he hired Ms. Macedonio. By letter dated February 13, 2018, the Government informed the Court of a potential conflict reflected in a newly discovered website, razhdenshulaya.com, which, among other things, contained derogatory comments regarding Shulaya's legal team. In particular, the website contained the following statements: 1) "His current CJA attorney has no motives or interest on the case as well as another attorney

---

[2] Regarding the appointment of CJA counsel during the October 18 conference, Judge Forrest noted the parade of lawyers representing Mr. Shulaya: "In light of the fact that this is Mr. Shulaya's third counsel, and the case is not particularly old, I am starting to be concerned that we are going to have sort of a rotating series of lawyers. Hence, it's my view that the CJA attorney may be an individual who we retain for the duration of the case as necessary who may be joined by co-counsel but who perhaps will not be released. So the retention of counsel may not be something that results in the elimination of the CJA counsel." Oct. 18 Tr. at 6.

who seems to take money and vanish. We can't get to know the case because the defense team still didn't provide any discovery in Russian to Razhden of why he has been held in a Federal Jail"; and 2) "We do not hire unlicensed, unprofessional scumbags, and thats who we were dealing with. So far, our attorney just take money and vanish with no work progress whatsoever. But even without defense team help, so much has been discovered." As further developed at subsequent conferences, much of the website's claims were demonstrably untrue.

On February 3, 2018, the Court convened a conference to address the allegations on razhdenshulaya.com. At that time, Shulaya, through his counsel, Ms. Macedonio, "indicate[d] that he [did not] know who created the website, nor [did] he want to know." Dkt. no. 645 at 3. The Court then addressed Shulaya directly, asking whether he had seen or knew about the website. Shulaya responded as follows: "I could not have known about this website at all, because I am isolated from society. . . As for my attorneys, they're very qualified attorneys, very good attorneys. Compared to the other attorneys that I previously had that stood before you, your Honor, deceived you. So I could not compare them to the previous ones at all." Id. at 4 (emphasis added). Shulaya then claimed not to have received translations of certain documents, including the Indictment, and that he was unable to review discovery. Id. at 5. Immediately proving that

statement to be false, Shulaya then specifically addressed one
particularly damning item provided in discovery—a video recording
of Shulaya and Khurtsidze, an committing an assault—and falsely
claimed that the video depicted Shulaya and Khurtsidze acting in
self-defense.[3]

In response to Shulaya's remarks, Judge Forrest first
attempted to confirm that Shulaya was, as he had just said,
content with his attorneys; Shulaya demurred: "I don't know how
to respond to this. I can't say that I am happy or unhappy with
them, but we haven't moved from a standpoint, and I think that
we need some additional time to settle some issues we have." Ms.
Macedonio then explained her efforts to provide Shulaya with
translations of discovery material, contradicting her client's
prior claim that he had not received the materials:

> There have been a number of documents
> that have been translated for Mr. Shulaya,
> including the indictment, several
> affidavits that were drafted, and obtained
> search warrants. Those things have been
> translated and given to him.

---

[3] The video, which was reviewed at trial, depicts Shulaya and
others berating a confidential source whom they had accused of
stealing funds from the poker house. At one point, the
confidential source places a small knife on the table before
Shulaya and instructs Shulaya to kill the source if Shulaya
truly believed the source had stolen from the vor. Shulaya then
instructed Khurtsidze to strike the source, which Khurtsidze
did, before Shulaya himself struck the source with a punch to
the face. The source, meanwhile, was made to stand with his arms
behind his back and his head bowed in deference to Shulaya, the
vor.

> We've also translated the various
> recordings. He's received transcripts of
> those, and also a transcript of his post
> arrest statements. Those are things that the
> defense team has transcribed. I think I
> included the indictment. We're continuing to
> pull out things that we think are important
> and transcribe them into Russian for him.
> Some of them are already in Russian.
> Sometimes there's a Russian-English
> counterpart, but he's getting transcripts of
> the documents that we deem to be important
> that he should have on a rolling basis.

Dkt. no. 645 at 7-8.

### 3.   Shulaya's Rejection of the Government's Plea Offer

Following Ms. Macedonio's entry into the case, she and Mr. Cecutti engaged the Government in discussions regarding a possible pretrial disposition. Among other things, on or about January 9, 2018, Ms. Macedonio and Mr. Cecutti met with the prosecutors handling Shulaya's case at the United States Attorney's Office. Following that meeting, the Government prepared a formal plea offer dated February 28, 2018, and transmitted that offer via email to defense counsel on March 2, 2018. See Adams Decl., Ex. 1. [Dkt. no. 1125-1]

The principal terms of the Government's only formal plea offer (the "Offer") extended to Shulaya were as follows:

- The Offer would have required Shulaya to plead to one count of racketeering conspiracy in violation of Title 18, United States Code, Section 1962. The Offer

recounted the penalties applicable to that offense, including the maximum term of imprisonment, i.e., twenty years.

- The Offer included a stipulated Guidelines calculation based on a series of predicate crimes, namely Shulaya's participation: (1) from in or about 2014 through in or about May 2017, in a conspiracy to traffic contraband tobacco ("Predicate Act One"); (2) in or about December 2014, in a conspiracy to steal, receive, and possess stolen merchandise that had been or would be transported in interstate commerce ("Predicate Act Two"); (3) on or about January 21, 2015, in the assault of an individual who had failed to provide cocaine to the defendant ("Predicate Act Three"); (4) in or about January 2016, in an attempt to extort approximately $100,000 from the owner of a business located in the vicinity of Brighton Beach Avenue, Brooklyn, New York ("Predicate Act Four"); (5) on or about February 19, 2016, in the assault of Mamuka Chaganava ("Predicate Act Five"); (6) on or about July 25, 2016, in the assault of a confidential informant who had previously worked at the Shulaya Enterprise's illegal gambling establishment in Brighton Beach, Brooklyn, New York ("Predicate Act Six"); (7) from at least in or about October 2016 through at least on or

10

about January 6, 2017, in aiding and abetting the payment of bribes to local law enforcement officers in return for the ability to operate nightclubs at which narcotics were sold to customers ("Predicate Act Seven"); (8) from in or about 2016, through in or about May 2017, in a scheme to defraud casinos through the use of interstate wire communications, electronic devices, and software designed to predict the behavior of particular models of electronic "slot" machines, thereby removing the element of chance from play of those machines ("Predicate Act Eight"); and (9) from in or about 2014 through in or about May 2017, in a scheme to defraud the employer of Nazo Gaprindashvili by accessing, and causing others to access, that employer's personal bank accounts in order to divert funds from that employer to the use of members of the Shulaya Enterprise ("Predicate Act Nine").

- The Offer would have stipulated that Shulaya had acted as a leader and organizer of the Shulaya Enterprise and that he had obstructed justice in connection with the investigation and prosecution of the Shulaya Enterprise.

- The resulting Guidelines sentencing calculation initially resulted in a range of 292 to 365 months of imprisonment, but for the statutory maximum term of imprisonment of 240 months imprisonment for Count One.

Given that statutory maximum term of imprisonment, the Offer would have provided for a stipulated Guidelines sentence of 240 months of imprisonment.

- The Offer included appellate and collateral attack waivers in the event that Shulaya had received a sentence of 240 months imprisonment or less.

On March 29, 2018, the Court convened another conference to address Shulaya's prior claim of discontentment with his counsel, at which time Ms. Macedonio was relieved, and Mr. Cecutti resumed his role as Shulaya's lead counsel, joined by Jennifer Louis-Jeune, Esq. Dkt No. 658. At that conference, Shulaya was asked whether he was satisfied with Mr. Cecutti's representation and claimed, falsely, that Shulaya was yet to receive the discovery in this case. See Tr. at 13 (Mar. 29, 2018) [dkt. no. 1145]. On the same day, Shulaya wrote directly to the Court stating, among other things,

> I asked my attorney questions regarding motions available for my case and so far the attorneys did nothing and i still do not understand if i can do be needed to support my defense. I was presented with a plea agreement but I still do not understand the plea and i need someone to explain the plea agreement and for this i need some additional time. when i told the attorney that i needed time his response was that we do not have time to read even if i told him i did not

> understand what it was written in the plea
> agreement.

Dkt. no. 656.

At the March 29, 2018, conference, Ms. Macedonio contradicted Shulaya's claims regarding the transmission and explanation of his plea Offer: "I wanted to note for the record that Mr. Shulaya was presented with the plea agreement and that it was translated into Russian. . . and the plea offer was rejected by Mr. Shulaya after it was translated for him." Tr. at 9. Ms. Macedonio further explained that the Offer had been transmitted and explained prior to its expiration: "Mr. Cecutti and I had met with the government prior getting the written plea agreement so we understood what the terms of the plea offer were going to be. We then presented those terms to Mr. Shulaya two months ago. So he understood before he got the written plea offer what the plea offer was going to look like." Id. The Court then confirmed that the defense had received the Government's written Offer prior to the expiration of that Offer and whether defense counsel had received a second rejection of the Government's Offer after receiving the written Offer: "The Court: So it was twice explained and twice rejected? Ms. Macedonio: Yes." Id. at 10. At the same conference, Shulaya personally addressed the Court and, among other things, made clear that he maintained his innocence as to at least certain of the predicate acts listed in the Offer: "First of all, the charges

13

that were brought against me, they were connected to some kind of millions that I never seen. I never even dreamed of them." Id. at 11.

Following this letter and continued assertions regarding his discovery, the Court issued a formal memorandum and order regarding Shulaya's claims regarding a purported lack of access to discovery. Dkt No. 677 (the "Order"). The Order held Shulaya's claims to be false and frivolous, stating, among other things, that "from the outset of this case, Mr. Shulaya has claimed that he has never been given access to the discovery materials at the Metropolitan Detention Center ('MDC') in Brooklyn, where he is currently housed—in spite of his attorneys' and the Government's representations to the contrary." The Court recounted the most recent of Shulaya's false claims regarding his attorney's efforts and discovery availability and described the Court's own factfinding that had resulted in a determination that Shulaya's discovery was and had been available and that Shulaya had only attempted to access that discovery on three occasions over the course of his detention at the MDC.

On May 24, 2018, the Court convened a final pretrial conference in advance of the trial of Shulaya and Khurtsidze. Dkt. no. 804 (Tr. at 2). At that time, the Court again discussed any prior plea offers and Shulaya's rejection of the Offer: "The Court: Mr. Cecutti can you tell me whether or not there was a

formal offer which was conveyed to you, as the Government has suggested, and whether or not it was conveyed by you to Mr. Shulaya?" Shulaya's counsel confirmed the receipt and transmission of the Offer: "Yes. That was at a time when Ms. Macedonio was also representing Mr. Shulaya. An offer was made to Mr. Shulaya. We discussed it with him and he rejected it." Id. at 53. Mr. Cecutti further confirmed that he had been present for discussions of the Offer and reconfirmed that Shulaya had rejected it. Id. Finally, the Court confirmed the same with Shulaya himself: "The Court: Mr. Shulaya, was a plea offer conveyed to you from Mr. Cecutti or Ms. Macedonio, and you rejected it? The defendant: 20 years, yes. I rejected that." Id. at 54.

Shulaya was convicted at trial on five counts carrying a maximum term of imprisonment of sixty-five years. He was sentenced on December 19, 2018, principally to a below-Guidelines term of forty-five years' imprisonment.

**B. Legal Standard**

**1. Shulaya's Attorneys Were Not Ineffective in Connection with his Rejection of the Government's Plea Offer**

**a. Applicable Law**

**i. The Strickland Standard**

A claim of ineffective assistance of counsel fails unless a defendant: (i) overcomes a "strong presumption" that his counsel's conduct was reasonable and shows that his representation "fell below an objective standard of reasonableness" under "prevailing professional norms," and (ii) "affirmatively prove[s] prejudice," that is, shows that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 693-94 (1984); accord United States v. De La Pava, 268 F.3d 157, 163 (2d Cir. 2001). The burden is on the defendant to establish both elements. Strickland v. Washington, 466 U.S. at 687.

Under the first prong of the Strickland analysis, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that [t]here are countless ways to provide effective assistance in any given case and that [e]ven the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quotation marks omitted). A defendant cannot

prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate. United States v. Sanchez, 790 F.2d 245, 253 (2d Cir. 1986).

Under the second prong, a defendant must meet the "heavy burden" of showing "actual prejudice." Strickland, 466 U.S. at 692. To satisfy the prejudice prong, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94. A defendant cannot establish prejudice by merely showing that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693. Only where both prongs of the Strickland test are satisfied can it be concluded that "counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." Id. at 687.

### ii. Ineffective Assistance of Counsel in the Context of Plea Offers

Criminal defendants do not have a constitutional "right to be offered a plea [agreement] . . . nor a federal right that the judge accept it." Missouri v. Frye, 566 U.S. 134, 148 (2012). However, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering

whether to accept it." <u>Lafler v. Cooper</u>, 566 U.S. 156, 168 (2012).

In <u>Missouri v. Frye</u>, the Supreme Court held that:

> As a general rule, defense counsel has the duty
> to communicate formal offers from the prosecution to
> accept a plea on terms and conditions that may be
> favorable to the accused. . . . When defense counsel
> allowed the offer to expire without advising the
> defendant or allowing him to consider it, defense
> counsel did not render the effective assistance the
> Constitution requires.

<u>Id</u>. at 145. The Supreme Court explained that, in order to show

prejudice "where a plea offer has lapsed or been rejected because

of counsel's deficient performance," the defendant must

demonstrate a "reasonable probability" that he would have accepted

the plea offer, that "the plea would have been entered without

the prosecution cancelling it[,]" and that it would have resulted

in "a plea to a lesser charge or a sentence of less prison time."

<u>Id</u>. at 147.

### iii. No Automatic Entitlement to a Hearing

In ruling on a motion under 28 U.S.C. § 2255, the district

court is required to hold a hearing "[u]nless the motion and the

files and records of the case conclusively show that the prisoner

is entitled to no relief." 28 U.S.C. § 2255; <u>see</u>, <u>e.g.</u>, <u>Pham v.

United States</u>, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not

permit summary dismissals of motions that present facially valid

claims). However, the filing of a motion pursuant to § 2255 does

not automatically entitle the movant to a hearing; that section

18

does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." Machibroda 131 v. United States, 368 U.S. 487, 495 (1962); see, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. See, e.g., Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013).

### C. Discussion

The "files and records of the case" flatly refute the unsupported assertions of Shulaya's motion. Shulaya claims that after his counsel made him aware of the Government's plea offer, his counsel nevertheless "failed to discuss with [Shulaya] the strengths and weaknesses of the Government's case or to undertake a comparative sentencing analysis to enable [Shulaya] to make an informed decision as to whether he should accept or reject the offer." Mot. at 2. Shulaya further claims that his counsel failed to inform him of the difference in sentencing exposure in the event that Shulaya rejected the Offer and proceeded, as he did, to trial. Id. Finally, Shulaya claims that, had he been informed of his possible sentencing exposure, or that the "evidence against him would likely result in a conviction at trial, and/or that he should accept the Government's plea offer, he would have accepted

the plea agreement and entered a plea of guilty according to the terms of the plea agreement."

On two separate occasions, two separate attorneys for Shulaya contradicted his claims during colloquies with the Court. On March 29, 2018, Ms. Macedonio explained the process by which she and Mr. Cecutti had conferred with the Government to negotiate a plea, explained its expected terms to Shulaya, received a conforming formal offer, transmitted a translation of that offer to Shulaya, and received Shulaya's rejections on two occasions: "The Court: So it was twice explained and twice rejected? Ms. Macedonio: Yes." Tr. at 10.

Shortly before trial, Mr. Cecutti, reconfirmed Ms. Macedonio's in-court representations: "The Court: Mr. Cecutti can you tell me whether or not there was a formal offer which was conveyed to you, as the Government has suggested, and whether or not it was conveyed by you to Mr. Shulaya?" To which Mr. Cecutti responded: "Yes. That was at a time when Ms. Macedonio was also representing Mr. Shulaya. An offer was made to Mr. Shulaya. We discussed it with him and he rejected it." Dkt. 804 (Transcript of May 24, 2018, conference) at 53.

In light of these on-the-record representations by experienced counsel, coupled with Shulaya's own in-court confirmation that he had rejected the Government's Offer, Shulaya's self-serving and uncorroborated assertions that his

counsel had simply failed to discuss his plea offer or the strength of the Government's case is rejected is "palpably incredible," Machibroda 131 v. United States, 368 U.S. at 495. The overwhelming weight of the contrary and credible evidence available in the "the files and records" of this case, 28 U.S.C. § 2255, establishes that Shulaya's motion is simply the latest in a string of untruthful attempts to avoid the day of reckoning.

Finally, Shulaya's proposed Amendment is rejected as plainly contradicted by the record in this case. Mr. Cecutti was not assigned to Shulaya over Shulaya's objection or despite a purported willingness and ability to retain counsel, but rather as stand-by counsel who would remain engaged in the case and be ready to resume a lead role in the event that Shulaya fired his third retained counsel, Ms. Macedonio. That is, of course, precisely what occurred in this case. After Shulaya and Ms. Macedonio parted ways, Mr. Cecutti resumed his role as lead counsel, providing continuity of representation in the face of a revolving door of successive retained counsel. As the record set forth above makes clear, Shulaya's claim in the Amendment fails to describe any actual failure, conflict of interest, or unprofessional conduct on behalf of Mr. Cecutti. Thus his claim fails under Strickland's first prong.

## II. Shulaya's Motion For Bail is Denied

### A. Applicable Law

Federal courts have the "inherent power to enter an order affecting the custody of a habeas petitioner who is properly contesting the legality of his custody." Ostrer v. United States, 584 F.2d 594, 596 n. 1 (2d Cir. 1978). See also Mapp v. Reno, 242 F.3d 221, 226 (2d Cir. 2001). However, "[t]he standard for bail pending habeas litigation is a difficult one to meet." Grune v. Coughlin, 913 F.2d 41, 44 (2d Cir. 1990). This power may only be exercised in special cases. Mapp, 242 F.3d at 226. A petitioner challenging his sentence "should be granted bail only in unusual cases or when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." Ostrer, 584 F.2d at 596 n.1 (internal quotation marks and citations omitted).

In determining the propriety of granting bail, courts consider three factors:

(1) Are substantial claims set forth in the habeas corpus petition?

(2) Is there a demonstrated likelihood the petition will prevail?

(3) Are there extraordinary circumstances attending the petitioner's situation which would require the grant in

order to make the writ of habeas corpus effective, presumably if granted?

Jackson v. Bennet, No. 01 Civ. 8971, 2002 WL 126679, at *1 (S.D.N.Y. Jan. 30, 2002) (citing Richard v. Abrams, 732 F.Supp. 24, 25 (S.D.N.Y. 1990)).

**B. Discussion**

As set out above, substantial claims were not set out in the Motion, and the Motion has not prevailed.  Thus, there is no reason to grant bail.

CONCLUSION

Shulaya's Motion and Amendment [dkt. nos. 1, 6] are denied in their entirety.

In addition, Shulaya's motion for bail pending decisions on his § 2255 Petition [dkt. no. 7 in 19-CV-661] is denied.

The Clerk of Court shall mark 19-CV-661 closed and all pending motions denied as moot.

The Clerk of the Court shall mail a copy of this order to Petitioner.

SO ORDERED.

Dated:    New York, New York
          April 30, 2019

_____
LORETTA A. PRESKA
Senior United States District Judge